UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDNA F. LEWIS on behalf of RANDEL S. DAVIS (Deceased),<br><br>                                    Plaintiff,<br><br>     vs.<br><br><br>MICHAEL ASTRUE, Commissioner of Social Security Administration<br><br>                                    Defendant. | CASE NO. 09-CV-2110-MMA-WMC<br><br>**REPORT AND RECOMMENDATION: (1) TO GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) TO DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND (3) REMAND FOR FURTHER PROCEEDINGS** |

**I. INTRODUCTION**

Edna F. Lewis ("Plaintiff")[1] brings this action on behalf of Randel S. Davis, deceased, pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C §§ 1381, et seq. This matter was referred by Judge Michael M. Anello to Magistrate Judge William McCurine, Jr. for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(2) of Title 28 of the United States Code and Federal Rule of Civil Procedure 72(b).

---

[1] All subsequent references to "Plaintiff" in this Order will refer to Randel S. Davis, the claimant. As such, even though Edna F. Lewis is the formal Plaintiff in this matter, "Plaintiff" will be referred to in the male gender. Further, "Ms. Lewis" will be used for all subsequent references to Edna F. Lewis *not* in her capacity on behalf of Randel S. Davis, *e.g.*, as the author of non-medical witness statements.

Plaintiff has filed a motion for summary judgment. In the motion, Plaintiff argues he should have been found "disabled" under the Act beginning February 1, 2003. In addition, Plaintiff argues the Appeals Council's decision adopting the January 25, 2007 decision of the Administrative Law Judge ("ALJ"), which determined Plaintiff was disabled beginning November 22, 2006, should be reversed because the ALJ's decision is not supported by substantial evidence and is based on legal error. The Commissioner has filed a cross-motion for summary judgment. In the motion, Commissioner argues the contrary, namely the ALJ's decision is supported by substantial evidence and is not based on legal error.

Pursuant to the Southern District of California Local Civil Rule 7.1(d)(1), the Court finds these motions may be decided on the papers precluding need for oral argument. After careful consideration of the papers, the administrative record and the applicable law, the Court recommends the Commissioner's decision denying disability benefits be **VACATED**, Plaintiff's motion for summary judgment on behalf of Plaintiff be **GRANTED IN PART;** Defendant's cross motion to affirm the ALJ's decision be **DENIED** and this action be **REMANDED** for further proceedings.

## II. FACTUAL BACKGROUND

Plaintiff was 45-years-old on the alleged onset date of his disability of February 1, 2003. Plaintiff's medical reports span the period of 2003 to 2006 and document Plaintiff's conditions of, *inter alia*, post traumatic stress disorder ("PTSD"), depression, panic disorder,[2] hepatitis C, cirrhosis, psoriasis, recalcitrant thrombocytopenia, hepatosplenomegaly, gingival bleeding, gastrointestinal bleeding, hypertension, and diabetic hyperglycemia.

## III. PROCEDURAL HISTORY

On October 20, 2003, Plaintiff protectively filed an application for SSI under Title XVI of the Act, alleging disability beginning February 1, 2003. (Administrative Record ("A.R.") at 22). On April 30, 2004, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on January 18, 2005. (A.R. at 53).

---

[2] Plaintiff alleges his mental health issues arise from an assault in 2002. He was the victim of an alleged hate-crime related to his homosexual status.

1           At the January 18, 2005 hearing, Plaintiff testified he had not worked since February 2003
2   and was unable to work due to PTSD, depression and other anxiety-related mental illnesses. (A.R.
3   at 562-63). On March 8, 2005, the ALJ issued a decision denying the application. (A.R. at 32).
4   Plaintiff appealed the denial to the Appeals Council. (A.R. at 70).

5           On October 25, 2005, the Appeals Council vacated the ALJ's decision and issued an Order
6   of Remand stating the prior decision by the ALJ did not explain the weight given to the reports of
7   Dr. Sean Ryan and Dr. Brian Miller, or provide the explanation for their rejection. (A.R. at 75-78).
8   Accordingly, the Appeals Council directed the ALJ to: (1) offer an opportunity for a new hearing;
9   (2) give consideration to Plaintiff's treating and examining source opinions, and (3) explain the
10  weight given to this evidence. (A.R. at 22).

11          On January 9, 2007, Plaintiff appeared with counsel at a second administrative hearing and
12  testified that he was unable to work due to PTSD, depression and other anxiety-related mental
13  illnesses. Plaintiff also testified to physical symptoms resulting from several serious physical
14  conditions, particularly hepatitis C. (A.R. at 588-90).

15          On January 25, 2007, the ALJ issued a decision establishing Plaintiff has been disabled
16  under section 1614(a)(3)(A) of the Act beginning on November 22, 2006. (A.R. at 18-29).

17          On March 30, 2007, Plaintiff requested a review of the ALJ's decision before the Appeals
18  Council. (A.R. at 15-17). On April 28, 2009, the Appeals Council denied Plaintiff's request for
19  review. (A.R. at 7-10).  Hence, the ALJ's decision became the final decision of the Commissioner.

20          On September 25, 2009, Plaintiff filed a Complaint initiating this action for judicial review.

21          On February 22, 2010, Defendant filed an Answer.

22          As previously mentioned in the Introduction, on June 7, 2010, Plaintiff filed a motion for
23  summary judgment ("MSJ") on several grounds requesting the case be remanded for further
24  administrative proceedings.

25          On July 7, 2010, Defendant filed a cross-motion for summary judgment ("Cross-Motion")
26  and opposition to Plaintiff's MSJ requesting the Court grant Defendant's cross-motion and deny
27  Plaintiff's MSJ.

28          On July 9, 2010, Plaintiff filed a Reply to Defendant's cross-motion.

## IV. LEGAL STANDARD

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

## V. DISCUSSION

### A. Evidence

As previously noted herein, two administrative hearings were held in this case: one on January 18, 2005 ("2005 Hearing"), and another on January 9, 2007 ("2007 Hearing"). Medical evidence and/or testimony involving Plaintiff's physical and mental health, particularly related to Plaintiff's ability to engage in substantial gainful activity, was presented at each hearing.

*a. Medical Evidence Presented*

-June 2004: Brian Miller, M.D., completed a mental residual functional capacity ("RFC") examination of Plaintiff and noted moderate and marked limitations in several functional areas including difficulties in maintaining social functioning and ability to perform simple, repetitive tasks. (A.R. at 291-92). Dr. Miller also noted Plaintiff would be required to be absent from work more than ten days per month due to Plaintiff's psychological symptoms. (A.R. at 292). In a related examination, Dr. Miller concluded Plaintiff could not complete a regular workday or workweek without interruption from psychiatric symptoms. (A.R. at 292). Lastly, after conducting a mental assessment of Plaintiff, Dr. Miller determined Plaintiff suffers from PTSD, depression and anxiety. (A.R. at 295).

-June 2004: Sean Ryan, M.D., completed a RFC examination of Plaintiff and noted moderate and marked limitations in several functional areas including difficulties in maintaining social functioning and ability to perform simple, repetitive tasks. (A.R. at 284-85). Dr. Ryan also

noted Plaintiff would be required to be absent from work more than ten days per month due to Plaintiff's psychological symptoms. (A.R. at 285). In a related examination, Dr. Ryan concluded Plaintiff could not complete a regular workday or workweek without interruption from psychiatric symptoms. (A.R. at 285). Lastly, after conducting a mental assessment of Plaintiff, Dr. Ryan determined Plaintiff exhibited symptoms of PTSD, which "significantly impair Plaintiff's ability to sustain meaningful work". (A.R. at 288).

-January 2007: Sidney Bolter, M.D., a board certified psychiatrist, testified as a medical expert at the 2007 Hearing after reviewing Plaintiff's medical records. With respect to Plaintiff's mental health, Dr. Bolter testified the medical records in section 3F of the Administrative Record, which contain, *inter alia*, the records of Plaintiff's visits to Dr. Miller and Dr. Ryan, are "conclusory" statements unsupported by adequate "back-up notes" or "mental status examinations". (A.R. at 601-02). In particular, Dr. Bolter testified there is nothing in Plaintiff's medical records supporting a finding of depression or PTSD despite notations to the contrary in the reports of Dr. Miller and Dr. Ryan.[3] (A.R. at 601-03). Dr. Bolter acknowledged, however, Plaintiff may have "some depression in reaction to...[the] Hepatitis C [diagnosis]" and such depression may be "hard to treat" because of the "real problems" associated with the "chemical interaction between interferon and anti-depressant[s]". (A.R. at 602). As a result of the lack of supporting evidence in the reports, Dr. Bolter testified Petitioner did not have severe enough mental impairment to prevent him from performing "unskilled, low stress, no public, simple, repetitive task-type work" prior to November 2006. (A.R. at 603).

With respect to Plaintiff's physical health, Dr. Bolter acknowledged, as previously mentioned, Plaintiff's hepatitis C diagnosis. (A.R. at 602). In addition, Dr. Bolter testified

---

[3] In his testimony, Dr. Bolter indicated the methods used by Dr. Miller and Dr. Ryan to determine Plaintiff's mental health condition were inadequate and led to inaccurate results. In particular, with respect to diagnosing PTSD, Dr. Bolter contrasted the method of direct questioning with voluntary divulgence; the former being inadequate, the latter being more reliable. Dr. Bolter testified:
> When we make these [PTSD] diagnoses, we can squeeze a diagnosis out of a person. If you read, in a mental status, patient endorses these symptoms, it means he's been asked directly. The patient admits to these symptoms when he's asked directly. A patient *volunteers* these symptoms, that's something else. We don't expect the patient to understand all the technical aspects of any of these illnesses but there's [sic] some symptoms that are so obvious in post-traumatic stress that anybody who has it is going to tell you about it and [Plaintiff] hasn't said anything. So I can't use [the reports of Dr. Miller or Dr. Ryan]. (A.R. at 603.) (Emphasis added.)

1  Plaintiff's past and continuing alcohol consumption is not a material factor in Plaintiff's inability
2  to perform the aforementioned tasks. (A.R. at 605).

### *b. Vocational Evidence Presented*

1. A vocational expert, Mark Remas ("VE Remas"), testified at the 2005 hearing. VE Remas testified to Plaintiff's past employment record including wood machinist (skilled, medium work), student tutor (skilled, light work), and cashier (unskilled, light work). (A.R. at 569). VE Remas testified Plaintiff would be able to obtain employment as a laundry folder, machine operator,[4] or small products assembler, all of which would be "light, unskilled" work. (A.R. at 569-70).

2. VE Remas testified to the number of positions available in the local and national economy for each type of job. For the laundry folder: "about 400 in San Diego, and 113,000 nationally"; for the machine operator, "about 550 in San Diego, 151,000 nationally"; for the small products assembler, "about 4000 in San Diego, and 680,000 nationally." (A.R. at 569-70).

3. VE Remas testified Plaintiff would not be able to sustain employment if he would miss ten days per month due to his disability. (A.R. at 570).

4. Another vocational expert, J. Kilcher ("VE Kilcher"), testified at the 2007 Hearing. VE Kilcher testified Plaintiff would not be able to perform his past relevant work as a cashier, tutor, or carpenter as a result of Plaintiff's limited residual functional capacity, which was documented by several physicians including Dr. Miller and Dr. Ryan. (A.R. at 605).

5. VE Kilcher also testified Plaintiff would be able to perform light, unskilled work as a small products assembler, for which there would be "approximately 96,000 [jobs] in the U.S. and 550 in the San Diego region," or light, unskilled work as a hand packager, e.g., a nut and bolt packer, for which there would be "approximately 1,200 in the [San Diego] region and approximately 208,000 nationally." (A.R. at 604-05).

### *c. ALJ's Medical Evidence Evaluation*

The ALJ made the following findings based upon the evidence presented in the record:

---

[4] As to the type of machine operator, VE Remas testified, "He'd be able to work as a machine operator, particularly in production [sic] their packaging such as ampoule filler, or tape fastener machine operator, these are light, unskilled jobs." (A.R. at 570).

1      1. The ALJ rejected as conclusory Dr. Miller's and Dr. Ryan's findings that Plaintiff cannot perform sustained work due to adverse mental conditions. (A.R. at 26). The ALJ rejected the doctors' findings because the findings are unsupported by medical evidence in the record. (A.R. at 26). As such, the ALJ gave the "opinions" of Dr. Miller and Dr. Ryan "no weight". (A.R. at 26).

2. Dr. Bolter's opinion regarding Plaintiff's mental status during the period before November 22, 2006, is given "significant weight" because Dr. Bolter's opinion is "consistent with the medical record as a whole." (A.R. at 26).

3. On June 24, 2004, Plaintiff refused therapy for his mental health symptoms even though it was recommended by Dr. Ryan. (A.R. at 26).

4. In June 2005, Plaintiff was diagnosed with Hepatitis C. (A.R. at 25).

5. Plaintiff could have depression as a result of the hepatitis C diagnosis. (A.R. at 26).

6. On December 28, 2005, one of Plaintiff's physicians, Elliot M. Alpert, M.D., stated Plaintiff had no symptoms from his hepatitis C. (A.R. at 26).

7. Plaintiff did not have disabling symptoms from hepatitis C until he was hospitalized on November 22, 2006. (A.R. at 26).

8. Plaintiff's allegations of disabling limitations are not credible to the extent alleged because Plaintiff "is not taking the type of medication associated with severe disabling pain." (A.R. at 26).

9. Beginning on November 22, 2006, Plaintiff's impairment was of the severity such that it met the criteria in section 7.06 of Appendix 1, and is supported by the objective medical record. (A.R. at 28).

10. Thus, Plaintiff was not disabled prior to November 22, 2006, but Plaintiff became disabled on that date. (A.R. at 28).

11. Plaintiff's substance abuse disorder is not a contributing factor material to the determination of disability. (A.R. at 28).

12. Plaintiff has no transferable skills. (A.R. at 27).

13. Prior to November 22, 2006, "[Plaintiff] was capable of making a successful adjustment to work that existed in significant numbers in the national economy." (A.R. at 28).

**B. Plaintiff's Claims on Appeal**

*a. Plaintiff's Contentions*

Plaintiff asserts six claims in his motion for summary judgment. First, Plaintiff argues the ALJ erred in "failing to consider [probative, non-medical] statements by Plaintiff's mother" regarding the severity of Plaintiff's mental and physical conditions. (Pl.'s MSJ at 9, 23). Second, Plaintiff contends the "ALJ's determination of Plaintiff's mental RFC was not supported by substantial evidence from the record". (Pl.'s MSJ at 14). Third, Plaintiff asserts "[t]he ALJ erred in failing to evaluate Plaintiff's severe impairments" including PTSD, anxiety disorder and chronic liver disease. (Pl.'s MSJ at 16). Fourth, Plaintiff claims the ALJ erred in rejecting "the opinions of treating physicians, Drs. Miller, Ryan, Rao and Kornberg regarding Plaintiff's mental impairments with specific, legitimate reasons that are based on substantial evidence in the record" and "without making appropriate findings"[5] (Pl.'s MSJ at 20-21, 28). Fifth, Plaintiff contends "[t]he ALJ's reasons for discrediting Plaintiff's allegations of disabling pain were legally insufficient" (Pl.'s MSJ at 23). Sixth, Plaintiff claims "[t]he ALJ's decision failed to provide a valid opinion of Plaintiff's residual functional capacity" (Pl.'s MSJ at 27). Because the Court is recommending the case be remanded based upon Plaintiff's claim one, the merits of the remaining claims are not addressed.

1. The ALJ Erred In Failing To Consider Lay Witness Testimony

Plaintiff argues the ALJ erred in granting little to no weight to the statements of Edna Lewis (Plaintiff's mother). Plaintiff states the ALJ may consider evidence from non-medical sources, such as relatives, to show the severity of the claimant's impairment and how it affects his ability to work. See 20 C.F.R. § 404.1513(d). In this case, Ms. Lewis prepared and submitted a Function Report Adult–Third Party (form SSA-3380-BK). (A.R. at 177 ). This is a form offered by the Social Security Administration to allow lay persons to share their perceptions and opinions regarding a claimant's disability.

---

[5] In section VI.D of Plaintiff's MSJ, Plaintiff states, "The ALJ *failed to reject* the opinions of treating physicians..." (Pl.'s MSJ at 20) (Emphasis added.) The Court will construe this sentence as a typographical omission and mistake since the ALJ in his decision did in fact reject the doctors' opinions, and instead the Court will presume Plaintiff intended to argue, as he did in the Conclusion section of his MSJ, (see Pl.'s MSJ at 28), the ALJ "failed to *adequately* reject the opinions of treating physicians".

The Ninth Circuit has held,"[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ( internal citations omitted).  More recently, in *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006), the Ninth Circuit reiterated its position that "'lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore cannot be disregarded without comment.'" (internal citations omitted); *see also*, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("The ALJ's reasons for doubting [the lay witness'] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony.")

Defendant asserts "[i]t is not reversible error for an ALJ to fail to discuss the testimony of a lay witness when the testimony has little probative value or is in conflict with the available medical evidence." (Def.'s Cross MSJ at 5.) (internal citations omitted).  Defendant relies on *Valentine v. Commissioner*, *Soc. Sec. Admin.*, 574 F. 3d 685 (9th Cir. 2009) for the proposition that "the ALJ was not required to provided (sic) detailed reasons for rejecting Ms. Lewis' statements since her statements provided no additional information apart from the statements and testimony provided by Plaintiff. . . ." (Def.'s Cross MSJ at 5).  However, *Valentine* differs from the instant case in one important aspect; in *Valentine* the ALJ addressed the third party testimony.

Defendant also relies on *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) arguing "it is not reversible error for an ALJ to fail to discuss the testimony of a lay witness when the testimony has little probative value or is in conflict with the available medical evidence." (Def.'s Cross MSJ at 5).   Here, Defendant's reliance on *Vincent* is misplaced.  *Vincent* had lay witnesses making medical diagnoses.  For example, a lay witness in *Vincent* stated the plaintiff had a serious mental impairment as a result of a stroke.  The Court in *Vincent* held such diagnoses are beyond the competence of lay witnesses and are not considered competent evidence. *Id. at 139.*  Therefore, the Court found no error in the ALJ's failure to address the lay witness testimony. *Id.*  However, as noted herein,  lay witness testimony as to a claimants's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006).*

Lastly, Defendant asserts Ms. Lewis' opinion evidence did not provide "an adequate basis from which to credibly report about Plaintiff's limitations or condition" and "Ms. Lewis' statements . . . are not supported by the credited medical evidence." ( Def.'s Cross  MSJ at 5). Both these reasons are sufficiently germane for not crediting Ms. Lewis' opinion evidence. However, these reasons are *not* a part of the ALJ's decision.  Here, the ALJ did not acknowledge Ms. Lewis' third party function report.  The ALJ could easily have satisfied his burden by providing a germane and concise reason why Ms. Lewis' lay opinion evidence was not credited. Therefore, based on the applicable authority the ALJ's failure to analyze Edna Lewis' opinion was error.

 "Numerous regulations command the ALJ to consider throughout the sequential process, lay testimony as to how claimants' impairments affect their ability to work.  See e.g., 20 C.F.R. §§ 404.1513(d)(4) & (e), 404.1529(c), 404.1545, 416.913(d)(4) & (e), 416.929(c), 416.945." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Moreover, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

Here, the Court is unable to "confidently conclude no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*   Similar to the holding in *Stout*, this Court finds if the lay evidence were fully credited Plaintiff's mental impairments would necessitate a special working environment "which a reasonable ALJ could find precludes [Plaintiff] from returning to gainful employment." *Id. at* 1056.  Therefore, the Court cannot find the ALJ's error harmless when he failed to address the lay opinion evidence.

*b. Remand is Recommended to Remedy Procedural Error*

It is within the Court's discretion to decide whether to reverse and remand for further administrative proceedings or to reverse and award benefits.  *McAlister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Additionally, when "it is not 'clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited' remanding for

1  immediate benefits is not an appropriate remedy." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.)
2  *cert denied*, 531 U.S. 1038, 121 S.Ct. 628 (2000) (internal citations omitted). In the instant case,
3  remand is appropriate. The ALJ erred in failing to comment upon Ms. Lewis' lay opinion
4  evidence. On remand, the ALJ must address Ms. Lewis's lay opinion evidence and if the ALJ
5  rejects her proffered evidence the ALJ must provide germane reasons in the record for doing so.
6  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

## VI. CONCLUSION AND RECOMMENDATION

For the reasons explained above, IT IS HEREBY RECOMMENDED the Court GRANT IN PART Plaintiff's motion for summary judgment, DENY the Commissioner's cross-motion for summary judgment and REMAND this action for further administrative proceedings.

IT IS ORDERED that no later than March 18, 2011, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the court and served on all parties no later than March 25, 2011. The parties are advised that failure to file objections within the specified time may result in waiver of the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: February 25, 2011

                                    */s/ W. McCurine Jr.*

                                    Hon. William McCurine, Jr.
                                    U.S. Magistrate Judge
                                    United States District Court